# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN R. MARTINEZ,<br><br>             Plaintiff,<br><br>    v.<br><br>M.D. LUNES, et. al.,<br><br>             Defendants.<br>_____/ | CV F   04-5251   AWI SMS P<br><br>FINDINGS AND RECOMMENDATIONS TO DENY MOTION FOR SUMMARY JUDGMENT IN PART AND GRANT IN PART (Doc. 39-1) |

John R. Martinez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**A.   RELEVANT PROCEDURAL HISTORY**

This action is proceeding on the Complaint filed on February 6, 2004, against Correctional Officers M.D. Lunes and M.G. Chamalbide for retaliation and deliberate indifference in violation of the Eighth Amendment.

On December 1, 2006, Defendants filed a Motion for Summary Judgment. (Doc. 39.) Plaintiff filed an Opposition to the Motion on January 24, 2007.

1  **B. SUMMARY JUDGMENT STANDARD**

2  Summary judgment is appropriate when it is demonstrated that there exists no genuine
3  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.
4  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

8  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the
9  burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be
10 made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions
11 on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and
12 upon motion, against a party who fails to make a showing sufficient to establish the existence of
13 an element essential to that party's case, and on which that party will bear the burden of proof at
14 trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the
15 nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a
16 circumstance, summary judgment should be granted, "so long as whatever is before the district
17 court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is
18 satisfied."  Id. at 323.

19 If the moving party meets its initial responsibility, the burden then shifts to the opposing
20 party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.
21 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

22 In attempting to establish the existence of this factual dispute, the opposing party may not
23 rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the
24 form of affidavits, and/or admissible discovery material, in support of its contention that the
25 dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must
26 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
27 suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
28 Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

**C.  UNDISPUTED FACTS**[1]

1.  Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") pursuant to a valid judgment in the Orange County Superior Court for conviction of murder in the second degree and two counts of attempted

---

[1] The following facts are undisputed for the purpose of this Motion.

murder in the second degree.  Plaintiff is serving a term of 26 years to life.

2. Plaintiff was housed in the Secured Housing Unit ("SHU") at times material to the matters at issue in this action.

3. Defendants Lunes and Chamalbide were Correctional Officers at CSP-Corcoran at times material to the matters at issue in this action.

4. On December 17, 2001, Plaintiff was validated as an associate of the Mexican Mafia ("EME") prison gang.

5. Pursuant to § 3312 of the California Code of Regulations, when a staff member observes minor misconduct, that misconduct can be handled by verbal counseling. When verbal counseling achieves corrective action, a written report of the misconduct or counseling is unnecessary.

6. When similar minor misconduct recurs after verbal counseling or if documentation of minor misconduct is needed, a description of the misconduct and counseling provided shall be documented on a CDC Form 128-A, Custodial Counseling Chrono.  A copy of the completed form shall be provided to the inmate and the original placed in the inmate's central file.

7. On January 12, 2003, Defendant Chamalbide authored a Counseling Chrono ("Chrono") documenting the incident she allegedly had observed between Plaintiff and his cellmate, Radillo on October 15, 2002.

8. Plaintiff was not subjected to any disciplinary action because of the placement of the Chrono in his central file.

**D. ANALYSIS**

*1. Summary of Complaint*

Plaintiff states that he is a jailhouse lawyer.  In December 2002, Defendant Lunes confronted inmate Vizcarra whom Plaintiff was assisting in his capacity as a jailhouse lawyer. Defendant Lunes asked Vizcarra whether Plaintiff was helping him with the grievance he had filed against him.  Vizcarra confirmed that Plaintiff helped him.  On approximately December 22, 2002, inmate Rodriguez informed Plaintiff that Defendant Chamalbide asked him to warn

1  Plaintiff to be careful because the Institutional Gang Investigator ("IGI") was asking about him.
2  On December 23, 2002, Defendant Lunes approached Plaintiff's living quarters and took
3  Plaintiff to another area to give him a package.  Plaintiff states that Defendant Lunes told him he
4  knew that Plaintiff was helping other inmates file 602s (grievances) and was assisting inmate
5  Vizcarra with a grievance he filed against him.  Defendant Lunes then told Plaintiff in a "low
6  threatening voice" that there was a Chrono going around showing Plaintiff and his cellmate
7  ("cellie") (inmate Radillo) in an "act."  Defendant Lunes stated that he didn't care but it was
8  Plaintiff's "homies" he had to worry about should they find out.
9          On or about January 5, 2003, Defendant Chamalbide told inmate Rodriguez, another
10 EME gang member, that she had recently caught a pair of inmates at sex play and asked whether
11 that was a "bad thing."
12         On January 12, 2003, at approximately 5:00 a.m., Defendant Chamalbide approached
13 Plaintiff's cell and woke him up.  She informed him that she was going to have to write him up
14 and when Plaintiff inquired as to why, she said that the "squad (IGI) was making her" do it.
15 When Plaintiff asked what she meant, she responded that the squad wanted him in trouble and
16 was making her write him up because it was her last day.
17         Later that day, Defendant Chamalbide told inmate Rodriguez she was being pressured to
18 write Plaintiff up for the sexual behavior she had previously told him about.
19         On January 14, 2003, Plaintiff was given a CDC 128A Counseling Chrono which was
20 written by Defendant Chamalbide.  In this Chrono, Defendant Chamalbide states that on October
21 15, 2002, she saw Plaintiff"'grasping' his cellie's 'erect penis" while his cellies boxer shorts
22 were partially removed and that she ordered him to 'stop it' to which he complied." (Compl. at
23 5.)  Defendant Chamalbide states also that reason the Chrono was being issued late was because
24 her first line supervisor informed her of the importance of documenting this type of information.
25 Plaintiff alleges that the contents of the Chrono are false in that he never participated in such an
26 act.  Plaintiff also states that a fact finding investigation conducted by Sgt. D.K. Beebe revealed
27 that it was Defendant Lunes who asked Defendant Chamalbide to write the Chrono.
28         Plaintiff alleges that on February 26, 2003, while in the law library, he encountered

1  Defendant Lunes and told him that the next time he had a Correctional Officer ("C/O") falsify a
2  chrono to make sure that they didn't inform him of it.  Plaintiff states that Lunes told him "I told
3  you if you front me off I'm gonna do you wrong."

4  Plaintiff alleges that Defendants Chamalbide and Lunes retaliated against him for his
5  jailhouse lawyer activities by issuing a false chrono and then relaying that information to another
6  gang member for the purpose of putting him in danger.  Plaintiff also alleges that the Defendants
7  were deliberately indifferent to his safety when they relayed the contents of the Chrono to other
8  gang members.

### 2. Claims for Relief[2]

#### a. Retaliation

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under Section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir.2003).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action  (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).   The court must " 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995) (*quoting* Sandin v. Conner, 515 U.S. 472, 482, 115 S.Ct. 2293 (1995)).  The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing

---

[2] Although Defendants also present argument regarding a denial of due process with respect to the issuance of the chrono, this Court did not order service of the Complaint for a claim of due process. (Court Doc. 8) Thus, the Court does not address the due process issue in these Findings and Recommendations.

the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The federal system is one of notice pleading. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which apply to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. Discovery and summary judgment motions - not motions to dismiss - "define disputed facts" and "dispose of unmeritorious claims." Id. at 512. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

In this case, Defendants argue that Plaintiff has failed to state a claim for retaliation because he does not allege specific facts in the Complaint regarding his retaliation and Eighth Amendment claims. With respect to the retaliation claim, Defendants contend that the issuance of a "Chrono" is not an adverse action, that Plaintiff's rights were not "chilled," Plaintiff did not suffer any harm and documenting Plaintiff's misconduct advanced a reasonable correctional goal.

1    Under the Prison Litigation Reform Act ("PLRA") the Court has a statutory duty to
2 screen complaints in cases such as this and dismiss any claims that fail to state a claim upon
3 which relief may be granted. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A.  Given the
4 requirements of the PLRA, the Court is disinclined to view with favor a subsequent motion
5 seeking dismissal for failure to state a claim.  In this case, the screening function was performed
6 by the Court and an Order finding that Plaintiff stated a cognizable retaliation claim and Eighth
7 Amendment failure to protect claim issued on May 3, 2005.  Further, the Court finds Defendants
8 new arguments regarding whether the Complaint states a claim for retaliation unpersuasive.

9    Defendants argue that the issuance of a "Chrono" is not an adverse action because
10 Plaintiff was not subjected to "disciplinary action." (Motion at 6:17-20.)  Defendants later
11 contradict this statement by citing to the California Code of Regulations and stating that the
12 issuance of a Counseling Chrono is a "disciplinary method used to document minor misconduct."
13 (Motion at 6:13-14.)  Regardless of whether a Chrono is disciplinary in nature, Defendants cite to
14 no authority that an "adverse" action must be disciplinary in nature.  On the contrary, Ninth
15 Circuit authority holds that the threat of discipline or transfer for the plaintiff's exercise of his
16 First Amendment rights is sufficient adverse action to state a claim. See Gomez v. Vernon, 255
17 F.3d 1118, 1123 (9th Cir.2001); Valandingham v. Bojorquez, 866 F.2d 1135, 1141 (9th
18 Cir.1989).  Thus, the fact that Plaintiff was not "subjected to disciplinary action" does not
19 support Defendant's assertion that no "adverse action" was taken against him.

20    Defendants also contend that Plaintiff's First Amendment rights were not "chilled."
21 However, again, the proper inquiry is not whether an actual chilling took place, but whether an
22 official's acts would chill or silence a person of ordinary firmness from future First Amendment
23 activities.  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir.2005) (finding speech can be chilled
24 even when not completely silenced).

25    Defendants next assert that Plaintiff suffered no harm.  The Ninth Circuit has held that an
26 inmate who has been labeled a "snitch" is subject to serious harm.  Valandingham v. Bojorquez,
27 866 F.2d 1135, 1138-39 (9th Cir. 1989).  Similarly, the documentation of an incident Plaintiff
28 alleges did not occur and the relaying of that information to Plaintiff's fellow gang members is

sufficient harm to state a cognizable claim for retaliation.

Finally, Defendants argue that documenting Plaintiff's misconduct advanced a reasonable correctional goal because the safety and security of the institution requires monitoring and documenting the conduct of gang members and their associates. (Motion at 7:1:-6.) In screening the Complaint, Plaintiff's allegations must be viewed in the context of Plaintiff's claims of retaliation. Actions which may not be actionable in themselves may support a claim of retaliation where the defendant was retaliating against the prisoner for exercising a constitutional right and retaliation was a substantial or motivating factor for the defendant's acts or conduct. See, Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84, 97 S.Ct. 568 (1977) (Retaliation by state actor for exercise of constitutional right actionable under § 1983 even if the acts, when taken for different reasons, would have been proper or at least not unconstitutional.) Thus, while documenting gang activity and the resulting issuance of a Chrono in and of itself may be proper, an allegation that it was done solely to retaliate against an inmate for exercise of his First Amendment right is sufficient to satisfy notice-pleading. Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (Rule 8(a) expresses the principle of notice-pleading, whereby the pleader need only give the opposing party fair notice of a claim.)

Here, Plaintiff clearly alleges in the Complaint that Defendant Lunes inquired into Plaintiff's activities in assisting another inmate file a grievance against him in December of 2002. Defendant Lunes stated at that time that there was a Chrono going around regarding Plaintiff's prohibited sexual activity and that Plaintiff needed to worry about his "homies" finding out. (Compl. at 3.) Defendant Chamalbide later informed Plaintiff that her "squad" IGI, was making her write him up and that the squad "wants you in trouble." (Compl. at 4.) After the Chrono issued on January 12, 2003, for events that allegedly occurred the prior October, Defendant Lunes stated to Plaintiff "I told you if you front me off I'm gonna do you wrong." (Compl. at 6.) The allegations in the complaint sufficiently state a claim for retaliation as it does not appear beyond a doubt that Plaintiff can prove no set of facts in support of his claims which would entitled him to relief. Accordingly, the Court will RECOMMEND that the Motion for dismissal for failure to state a claim be DENIED.

To the extent Defendants are seeking summary judgment on the retaliation claims, the Court finds that Defendants have failed to meet their burden of establishing that there exists no disputed issue of fact warranting trial.  Although Defendants attempt to establish that there is no dispute as to the legitimacy of documenting the alleged sexual misconduct, Plaintiff provides evidence to dispute such legitimacy and also that the misconduct occurred.

The California Code of Regulations, on which both parties rely, provides that inmate misconduct shall be handled by verbal counseling and when verbal counseling achieves the corrective action, a written report of the misconduct is unnecessary. (15 Cal.Code Regs. §§ 3312.)  Plaintiff provides the Court with Defendant Chamalbide's Answers to Interrogatories in which she states she did not issue a written Chrono of the incident immediately because the verbal counseling achieved corrective action. (Exh. C, p. 2, Opp. Mtn for Summ. Judgment.)  In those interrogatories, Defendant Chamalbide also states that she only issued the Chrono after Defendant Lunes asked her to but that she was reluctant to do so because too much time had lapsed.  (Id. at p. 3.)  Defendants submit no evidence regarding the actions of Defendant Lunes.

Plaintiff also provides evidence to dispute that the alleged misconduct even took place. In support of his Opposition is the declaration of Juan Radillo, Plaintiff's cellmate at the time the sexual misconduct allegedly occurred and who allegedly participated in the sexual misconduct.  (Exh. A, Opp. Mtn. Summ. Judgment.)  Mr. Radillo states that the contents of the Chrono issued by Defendant Chamalbide are false as he and Plaintiff never engaged in sexual misconduct.[3] Id.  Plaintiff provides sufficient evidence to create a disputed issue of fact as to the very conduct that forms the basis on which Defendants allegedly issued the Chrono.  As such, Plaintiff has created a disputed issue of material fact sufficient to defeat the Motion for Summary Judgment on the retaliation claim against both Defendants Chamalbide and Lunes.

**2. Eighth Amendment**

---

[3] Mr. Radillo states that on the evening of January 12, 2003, Defendant Chamalbide entered the cell he occupied with Plaintiff and told Plaintiff that she was writing him up. Id.  According to Radillo, Defendant Chamalbide stated that the "squad" was making her write Plaintiff up against her will.  When Plaintiff inquired further, Radillo states that Defendant Chamalbide said she thought that the squad wanted him in trouble. Id. According to Radillo, Chamalbide also stated that she really didn't want to do it but that her job depended on it, that it was her last day and that she was sorry. Id.

  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Hoptowit v. Ray, 682 F.2d at 1250-51; Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer v. Brennan, 511 U.S. at 834. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834 (*citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837.

  Defendants argue that Plaintiff also fails to state an Eighth Amendment claim because claims that he might be assaulted are speculative. However, Plaintiff need not establish actual injury to sufficiently state an Eighth Amendment claim for failure to protect. Farmer, 511 U.S. 825, 114 S.Ct. 1970 (1994) (Plaintiff need not wait for a "tragic event" such as an actual assault before obtaining relief).

  Defendants also argue that the allegation that the information was relayed is based on inadmissible hearsay. However, when a plaintiff lacks personal knowledge of certain facts but, based on hearsay, believes them to be true, those facts may be alleged in the Complaint. The Federal Rules of Civil Procedure permit such pleading as long as the allegation is identified as such and there is a likelihood the allegations will have evidentiary support after reasonable opportunity for investigation and discovery. Fed.R.Civ.P. 11(3)(b).

  Here, the Complaint alleges that both Defendants knew that sexual misconduct between gang members was prohibited and such information, if relayed to other gang members, could subject Plaintiff to physical harm. (Compl. at 10.)   The Complaint also alleges that Defendant Chamalbide relayed this information to another gang member (Compl. at 10). The Complaint does not allege, however, that Defendant Lunes also relayed that information to other inmates. The Complaint alleges only that Defendant Lunes stated that Plaintiff had to worry about his "homies" finding out. (Compl. at 3.)   At most, the Complaint alleges that Defendant Lunes hinted or made threat that the information could be relayed. Threats, however, do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987); Oltarzewski

11

v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983). As indicated above, to state an Eighth Amendment claim, Plaintiff must allege that the Defendants knew of and disregarded a risk to his safety. Although the Complaint alleges that Defendant Lunes knew that sexual activity between EME gang members was prohibited, the Complaint does not allege facts indicting that Defendant Lunes disregarded his safety.

Accordingly, Plaintiff fails to state a claim against Defendant Lunes and the Court will recommend that the Eighth Amendment failure to protect claim against Defendant Lunes be dismissed.

With regard to Defendant Chamalbide, in opposing the Motion for Summary Judgment, Plaintiff has presented evidence to dispute that the alleged sexual activity occurred and also that the contents of the Chrono were relayed to another gang member by Defendant Chamalbide. (Exhs. A, F, Opp. Mtn. Summ. Judgment.) Plaintiff's allegations and evidence are sufficient to state a claim and create a disputed issue of fact warranting trial. Accordingly, the Court will recommend that the Motion for Summary Judgment will be denied with respect to Defendant Chamalbide.

### E. CONCLUSION AND RECOMMENDATION

The Court RECOMMENDS that the Motion For Summary Judgment on the retaliation claim against Defendants Chamalbide and Lunes be DENIED; that the Eighth Amendment claim against Defendant Chamalbide be DENIED; and that the Eighth Amendment claim against Defendant Lunes be GRANTED and Defendant Lunes be DISMISSED from the action.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served

1 and filed within TEN (10) court days (plus three days if served by mail) after service of the
2 Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C.
3 § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time
4 may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153
5 (9th Cir. 1991).

6 IT IS SO ORDERED.

7 **Dated:**   **February 16, 2007**                      /s/ Sandra M. Snyder
  icido3                                     UNITED STATES MAGISTRATE JUDGE